### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**NORTH MISSISSIPPI MEDICAL
CENTER, INC.**                                                    **PLAINTIFF**

**V.**                                     **CIVIL ACTION NO.:** 1:23-cv-00003-GHD-DAS

**QUARTIZ TECHNOLOGIES
a d/b/a of VALUE ASCENT INC.**                                   **DEFENDANT**

### NOTICE OF REMOVAL

**TO:**  **The Honorable District Judges and Clerk of the United States
District Court for the Northern District of Mississippi, Aberdeen
Division**

**The Honorable Judges and Clerk of the Circuit Court of Lee County,
Mississippi**

**Mark N. Halbert, Esq.
Andrew W. Coffman, Esq.**

**PLEASE TAKE NOTICE** that Defendant, Quartiz Technologies a d/b/a of

Value Ascent Inc., (hereinafter "Quartiz"), has filed this Notice of Removal, as

required by law removing that action styled *North Mississippi Medical Center, Inc.*

*v. Quartiz Technologies a d/b/a of Value Ascent Inc.,* bearing Cause Number CV22-

112(M)L on the docket of the Circuit Court of Lee County, Mississippi, to the United

States District Court for the Northern District of Mississippi, Aberdeen Division, by

and through undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446,

and would respectfully show unto the Court as follows:

1.      On or about December 5, 2022, Plaintiff, North Mississippi Medical

Center, Inc. (hereinafter "NMMC"), by and through its attorneys of record, filed its

Complaint in the Circuit Court of Lee County, Mississippi, against Quartiz, styled

*North Mississippi Medical Center, Inc. v. Quartiz Technologies a d/b/a of Value*

*Ascent Inc.,* bearing Cause Number CV22-112(M)L on the docket of the Circuit

Court of Lee County, Mississippi, hereinafter referred to as the "State Court action."

Exhibit A, Complaint. A complete copy of the entire case file of the State Court

action will be electronically filed in accordance with L.U.Civ.R 5(b).

2.      Plaintiff failed to effectuate service of process upon Quartiz through

personal service upon the wife of Eldo Mathew, Quartiz's director. *Sun South LLC*

*v. Bayou Vista LLC*, 281 So.3d 980 (Miss. Ct. App. 2019) (personal service on spouse

of officer or agent of defendant corporation improper). While Quartiz disputes the

validity of service in this matter, this Notice of Removal is filed within thirty (30)

days of the date of receipt of those documents. Exhibit B, Affidavit of Service. This

case is removed less than one (1) year after commencement of the State Court

action, in compliance with 28 U.S.C. §1446(b).

## PARTIES

3.      Plaintiff has pleaded that it is a Delaware corporation with its

principal place of business in Tupelo, Mississippi. Exhibit A, Complaint, ¶ 6. A

review of the publicly available information on the Mississippi and Delaware

Secretary of State websites confirms that NMMC is a limited liability company

formed pursuant to the laws of the State of Delaware. Exhibit C, Secretary of State

Website Information. The citizenship of a corporation for diversity purposes is

determined by its state of incorporation and the state of its principal place of

business. 28 U.S.C. § 1332. For purposes of determining whether diversity of the parties has been met, based on this information, NMMC is a citizen of both Mississippi and Delaware.

4.      Defendant Quartiz is now and has at all relevant times been a corporation organized and existing under the laws of the State of Virginia and having its principal place of business in McLean, Virginia. Exhibit A, Complaint ¶ 7; Exhibit D, Virginia Secretary of State Website Information. Therefore, Quartiz's domicile and citizenship are established to be in Virginia for purposes of determining diversity jurisdiction and Quartiz's burden to establish its domicile and citizenship for diversity purposes is met. *Griffin v. ABN Amro Mortg. Group, Inc.*, No. 3:14-cv-00022-GHD-JMV, 2014 WL 4199202, *2 (N.D. Miss. Aug. 22, 2014) ("For citizenship of corporations, under 28 U.S.C. §1332(c), the removing party must identify the state of incorporation and the principal place of business.")

## JURISDICTION

5.      28 U.S.C. § 1441 provides for the removal of civil actions brought in state court when the district courts have original jurisdiction over such actions. Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . ." 28 U.S.C. § 1332.

**Plaintiff NMMC and Defendant Quartiz Are Citizens of Different States**

6.      Diversity jurisdiction is established by the showing herein of each party's citizenship and the concomitant showing that the Plaintiff and Defendant are citizens of different states. *Griffin,* 2014 WL 4199202 at *2. NMMC is a citizen of Delaware and Mississippi by its own allegations in ¶ 6 of the State Court Complaint. *Steed v. Hartford Underwriters Ins. Carrier*, No. 4:14-CV-00147-DMB, 2015 WL 3440486, at *1 n. 4 (N.D. Miss. May 28, 2015) (holding that allegations in complaint are sufficient for establishing plaintiff's citizenship); Exhibit A, Complaint. Quartiz is a citizen of the state of its principal place of business and the place of its incorporation, both of which are Virginia. Exhibit D, Virginia Secretary of State Website Information; *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.*, 757 F.3d 481, 484 (5th Cir. 2014) (citizenship of corporation is state of incorporation and principal place of business).

Therefore, complete diversity of citizenship for purposes of 28 U.S.C. § 1332 exists between all properly identified and named parties to this action since there is diversity of citizenship between NMMC, a citizen of Mississippi and Delaware, and Quartiz, a citizen of Virginia. Venue is also proper in this Division of this District 28 U.S.C. ¶¶ 1391-92.

**The Amount in Controversy Exceeds $75,000.00**

7.      Generally, the allegations in the plaintiff's complaint determine the amount in controversy. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). The amount in controversy is, first, determined by whether it is

"facially apparent" that the claims and damages sought exceed the jurisdictional amount of $75,000.00 less interest and costs. *Id.* Simply reading the Complaint, however, is not the end of the inquiry.

To make the determination of the amount in controversy requires looking to "what the plaintiff is claiming" and not what "the plaintiff is likely to . . . be awarded". *Carter v. Westlex Corp.*, 643 Fed. Appx. 371, 376 (5th Cir. 2016) (cleaned up). Thus, even though, as here, the removing Defendant denies any liability, that denial has no impact on determination of the amount in controversy. Nevertheless, if it is not facially apparent that the claims alleged in the complaint satisfy the amount in controversy requirement, "the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *Greenberg,* 134 F.3d at 1253; *see also Clayton v. Denbury Operating Co.,* 2017 WL 6273527, *1 (S.D. Miss. Dec. 11, 2017) (cleaned up).

Further, multiple claims made against a single defendant, as here, by a single plaintiff may be aggregated to determine whether the amount in controversy requirement has been satisfied. *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 585 (2005) (Ginsberg, R.B., dissenting) (citing *Edwards v. Bates County,* 163 U.S. 269, 173 (1896)); *see also Hardy v. Jim Walter Homes, Inc.,* 2007 WL 1889896 (S.D. Ala. June 28, 2007) (collecting cases). Further, in cases such as this one, where the Plaintiff alleges a claim for injunctive relief to prevent or enforce a future obligation, the value of those claims for purposes of the amount in controversy is the value of the rights sought to be enforced (by Plaintiff) or the value

of the rights sought to be protected (by Defendant). *B-Y Strawberry Square, Ltd. v. Ross Dress For Less, Inc.*, No. SA-13-CV-00316-DAE, 2013 WL 4400883, at *4–5 (W.D. Tex. Aug. 14, 2013).

8.      Plaintiff's claims against Quartiz can be summarized as (1) claim for injunctive relief, added to a (2) claim for breach of contract. The Complaint alleges:

…

FACTS

10.      NMMC entered an Agreement with Quartiz Technologies that was effective as of August 22, 2018. That Agreement, as amended, is attached as Exhibit A.

11.      Under the Agreement, Quartiz took over the management of certain NMMC data contained in a PeopleSoft database. Quartiz's role was to move the PeopleSoft database to the cloud and then manage that database. Essentially, during the three year term of the agreement, Quartiz was to configure the PeopleSoft database to provide the needed functionality and to maintain any necessary upgrades.

12.      PeopleSoft is a commercially available software. NMMC is and was, at all times, the licensed user of the PeopleSoft software. Any licensed user has the right to configure the PeopleSoft database as provided by its creator, Oracle.

13.      Pursuant to the terms of the Agreement, NMMC is entitled to the return of all its data. Paragraph 1 of the October 11, 2019 amendment to the Agreement states,

> All data, records, and reports relating to Client's Business (collectively, "DATA"),...shall be treated by Company...as the exclusive property of Client.... Uponrequest by Client at any time and from time to time and without regard to the default status of the parties under the Agreement, Company shall promptly deliver to Client the DATA in mutually agreeable electronic format on the date of the request by Customer.

14.      After a series of unsuccessful discussions seeking the return of the data, on October 7, 2022, NMMC made a formal request for the return of its data within thirty (30) days. That October 7, 2022 letter is attached **as Exhibit B.**

15.      After that thirty (30) day period had run, on Friday November 11, 2022, Quartiz wrote back to NMMC refusing to provide the data and raising various other issues. That November 11, 2022 letter is attached as **Exhibit C.**

16.      On November 15, 2022, NMMC sent another data demand specifically asking for all its data and the PeopleSoft application database including its configurations.

17.      On November 16, 2022, Quartiz responded to that demand. Quartiz claimed that the previous October demand was invalid.

6

18.     On Friday November 18, 2022, Quartiz wrote to NMMC saying it would provide the requested information in "comma delimited electronic format files."

19.     By offering to provide the information sought in this format, Quartiz was offering to spend hours moving the data from its native format into a spreadsheet. Such a task would be expensive and Quartiz would doubtlessly bill NMMC for this work. Additionally, it would then require NMMC to engage in substantial work to put the information contained in the spreadsheet back into the PeopleSoft database.

20.     This delaying tactic coupled with an attempt to generate more work for itself is typical of Quartiz. For instance, Quartiz has suggested that it should provide an upgrade to PeopleSoft during the period in which NMMC was attempting to retake control of its data and database. Quartiz estimated such an upgrade would require 1,800 hours of work. That estimate equals approximately $250,000 in payments to Quartiz based on the contractual hourly rate. NMMC believes that if Quartiz returned its data and database, it could make this upgrade in a single day.

21.     On November 21, 2022, NMMC wrote back to Quartiz saying the comma delimited electronic format was not acceptable and seeking the data and database as a ".tar" file with ".dmp" and ".log" files as had previously been delivered to NMMC.

22.     NMMC's initial demand for the data was that it be provided in native tools provided by Amazon Web Services, where the data is currently stored and where it will be stored in the future. This should have been the easiest and cheapest solution.

23.     NMMC's November 21 position was a compromise offering use of a format that it knew Quartiz could provide because Quartiz had previously provided NMMC with the data as a ".tar" file with ".dmp" and ".log" files. This compromise would be much easier and cheaper for both parties than the proposed spreadsheet of data offered by Quartiz.

24.     Having not heard back from Quartiz, on November 28, 2022, NMMC wrote seeking an update on the progress in delivering the file requested.

25.     On November 29, 2022, Quartiz responded that it did not yet have an update and that providing the files would require "a full legal review."

26.     Almost two months after its initial request for the return of its data, NMMC still does not have the data or the database that it needs to operate.

27.     As a result of Quartiz's failure to provide the requested data to NMMC, NMMC has lost control of its sensitive business data, has lost the opportunity to control many of its core functions, and has had to pay on-going monthly invoices from Quartiz. Those expenses are not minimal. For instance, NMMC intended to update the tax information in its PeopleSoft database after retaking control of its core functions. The delay in providing the data and database means that NMMC will be forced to allow Quartiz to provide this update and will ultimately be billed for those services.

28.     Without this data, NMMC is at the mercy of Quartiz as its core functions can only continue to operate so long as Quartiz maintains the PeopleSoft database. This loss of control of its sensitive data represents an on-going irreparable injury to NMMC which cannot be cured by money damages.

7

29.    NMMC has suffered a monetary loss because of the on-going bills it is receiving from Quartiz, including bills for work that go beyond normal system maintenance.

30.    Finally, NMMC has had to spend money to bring and prosecute this action. Pursuant to the terms of the Agreement, the prevailing party in any litigation is entitled to its attorney's fees.

31.    NMMC brings this action for a temporary and permanent injunction requiring the immediate return of its data in a commercially reasonable form, to obtain money damages for its losses, and to recover the attorney's fees it has expended in bringing and prosecuting this action.

## Claim I - Breach of Contract

32.    Paragraphs 1 -31 are incorporated hereby by reference.

33.    The Agreement is a valid and binding contract.

34.    The Agreement, by its plain language, provides that NMMC is entitled to the return of its data and database.

35.    NMMC has requested the return of its data and Quartiz has failed to comply the terms of the Agreement.

36.    As the direct and proximate result of Quartiz's breach of the Agreement, NMMC has been forced to bring this action to recover its data and database, has lost control of its data and database, has suffered monetary damages.

37.    NMMC is entitled to specific performance of the requirement to return its data and database.

38.    NMMC is entitled to an award of money damages for Quartiz's invoices paid by NMMC in the period when NMMC should have been able to run its own core functions and maintain its PeopleSoft database.

39.    NMMC is entitled to its attorney's fees for the cost and expenses of bringing this action pursuant to the terms of the Agreement.

## Claim II - Injunctive Relief

40.    Paragraphs 1-39 are incorporated herein by reference.

41.    Quartiz is refusing to return NMMC's data and database despite NMMC's formal demands for the return of the data and database and a contractual obligation to return NMMC's data and database. Failure to grant immediate injunctive relief will result in continuing irreparable harm and injury to NMMC because NMMC has lost the ability to control its own core internal functions, does not have the ability to maintain its own backups of this important business information, and has lost control over its own data.

42.    A preliminary and permanent injunction against Quartiz is consistent with the relief requested in this Complaint and the terms of the Agreement executed by Quartiz. Quartiz has no right to control or maintain the data and database and will not be harmed or prejudiced should the requested relief be granted.

43.     Failure to enjoin Quartiz from holding NMMC's data and database hostage will continue to result in additional harm that cannot be cured by money damages. There is no monetary award that can compensate NMMC for the loss of control of its data.

44.     The injury to NMMC outweighs any potential harm an injunction might do to Quartiz.

…

**PRAYER FOR RELIEF**

NMMC requests the following relief:

A.   specific performance of the requirement to return its data and database including a temporary and permanent injunction requiring the immediate return of its data and database through a standard Oracle database export which creates a "tar" file;

B.   an award of compensatory damages for the harm caused by Quartiz's breach of the Agreement;

C.   an award of attorney's fees for the cost and expense of bringing this action;

D.   pre- and post-judgment interest;

E.   a jury trial;

F.   a hearing at the earliest possible date on the injunctive relief sought herein and,

G.   all other equitable and legal relief the Court may find appropriate.

Exhibit A, Complaint.

9.     As noted, Plaintiff seeks an unspecified amount in compensatory damages, attorney fees, and injunctive relief. However, the value of Plaintiff's claim for purposes of assessing the amount in controversy exceeds the $75,000.00 threshold. When damages are unspecified, the Court may examine summary judgment type evidence to decide as the actual amount in controversy. *Clayton,* 2017 WL 6273527 at*1. Here, Plaintiff alleges that it is "entitled to an award of money damages for Quartiz's invoices paid by NMMC in the period when NMMC

should have been able to run its own core functions and maintain its PeopleSoft database." Exhibit A, Complaint, ¶ 38. While Plaintiff specifies no period for these Quartiz invoices which it claims its damages are based on, assuming that NMMC intends to assert its damages began to accrue following the expiration of the thirty (30) day period referenced in its October 7, 2022 letter, then invoices for work performed after November 6, 2022 should suffice give a reasonable estimation as to the amount in controversy with respect to NMMC's breach of contract claims.

On December 7, 2022, Quartiz invoiced NMMC for $32,551.59 for work done in November and on December 31, 2022, Quartiz invoiced NMMC for $48,564.00 for work done in December—a total of $82,254.08. Exhibit E, Affidavit of Eldo Mathew. Further, Quartiz expects to invoice NMMC at the end of January 2023 for an additional amount currently expected to be around $50,000.00. *Id*. Here, Plaintiff's claims for injuctive relief and its separate and independent claim for breach of contract, and for attorney fees, as aggregated properly, are in excess of $75,000.00, not counting interest and cost.

10.     Further, Plaintiff's injunctive relief claim, standing alone, is likely sufficient to establish the requisite amount in controversy to establish jurisdiction. When injunctive relief is sought, it is the "value of the right to be protected **or** the extent of the injury to be prevented" which governs the amount in controversy. *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1252-53 (5th Cir. 1998) (citing *Leininger v. Leininger,* 705 F.2d 727 (5th Cir. 1983)); *see also Allstate Ins. Co. v. Hilbun,* 692 F. Supp. 698, 700 (S.D. Miss. 1988). In the instant case, the value of

10

that right is, as Plaintiff claims, valuable enough that "no monetary award . . . [could] compensate NMMC." Exhibit A, Complaint, ¶ 43.

11. In sum, NMMC's Complaint request compensatory damages in excess of the jurisdictional threshold, but also seeks injunctive relief and attorney fees that further increase the amount in controversy. Quartiz has met its burden of showing by a preponderance of the evidence that, at the time of removal, the amount in controversy exceeds $75,000.00. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir.2000).

**CONCLUSION**

12. As demonstrated, there is complete diversity of citizenship between NMMC and Quartiz and the amount in controversy, less interest and costs, is in excess of $75,000.00. Therefore, this action is now removable pursuant to 28 U.S.C. §§ 1332; 1391-92 1441(a) and 1446(b), as amended and venue is proper in this Division of this District.

13. Written notice of the filing of this Notice of Removal and copies of all process, pleadings, and orders will be served on Plaintiffs as required by law.

15. A Notice of Filing, attaching a copy of this Notice of Removal as an exhibit thereto, will be filed with the Clerk of Court for the Circuit Court of Lee County, Mississippi as provided by law.

**WHEREFORE**, **PREMISES CONSIDERED**, Quartiz Technologies a d/b/a of Value Ascent Inc., by through counsel, respectfully submits this Notice of Removal of the State Court action to this Court.

11

**RESPECTFULLY SUBMITTED**, this the 3rd day of January 2023.

/s/ Taylor H. Webb
TAYLOR H. WEBB, MSB# 104180
taylor@tollisonlaw.com
TOLLISON & WEBB P.A.
103 N. Lamar Blvd., Suite 201
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095

## CERTIFICATE OF SERVICE

I, Taylor H. Webb, one of the attorneys for Defendant, Quartiz Technologies a d/b/a of Value Ascent Inc., hereby certify that I filed the above and foregoing **Notice of Removal** through the ECF system, which sent notice to counsel of record. I also certify that I served the same upon counsel of record by delivering a true and correct copy by way of United States mail or electronic mail as follows:

Attorneys for Plaintiff:

> Mark N. Halbert
> Andrew W. Coffman
> PHELPS DUNBAR LLP
> 105 East Main Street, Suite 201
> Tupelo, MS 38804
> mark.halbert@phelps.com
> andrew.coffman@phelps.com

This the 3rd day of January 2023.

/s/ Taylor H. Webb
Taylor H. Webb
