IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**NORTH MISSISSIPPI MEDICAL CENTER, INC.**,

*Plaintiff,*

v.

Cause No. 1:23-CV-3-CWR-LGI

**QUARTIZ TECHNOLOGIES, d/b/a VALUE ASCENT INC.**,

*Defendant.*

## ORDER

Before the Court is Plaintiff's *Motion for Preliminary Injunction and Expedited Hearing*, Docket No. 8, and the Defendant's *Motion for Leave to File Surreply*, Docket No. 62. The parties fully briefed the issues and the Court conducted an evidentiary hearing on the motion on March 27, 2023. *See* Docket Nos. 23 (Defendant's Response in Opposition) and 26 (Plaintiff's Reply). Having reviewed the evidence, arguments, and applicable law, the Court now concludes that preliminary injunctive relief is not warranted, and that the motions should be denied.

**I.  Factual and Procedural History**

In August 2018, North Mississippi Medical Center, Inc. ("NMMC") contracted with Quartiz Technologies to configure and manage a cloud-based database for a term of three years. Docket No. 8-1. Prior to that Agreement, NMMC used the commercial software PeopleSoft to perform many of its core data functions. Docket No. 9 at 4. The Agreement transferred most of NMMC's data management needs to Quartiz. In particular, the

Agreement provided that Quartiz would move NMMC's PeopleSoft database to the cloud, configure the database for optimal functionality, and manage the data for the duration of the contract term. Docket No. 8-1 at 14.

Quartiz and NMMC amended the Agreement on October 11, 2019, to address outstanding questions with respect to data ownership and hosting account ownership. *Id.* at 15. Under the 2019 amendments, the parties agreed that "[a]ll data, records, and reports relating to [NMMC's] Business" were "the exclusive property of [NMMC]." *Id*. The amendments went on to provide that "the furnishing of such Records, or access to such items by [Quartiz] shall not grant any express or implied interest in or license to [Quartiz]" and allowed NMMC to request hosting account ownership from Quartiz "at any time." *Id*.

On October 7, 2022, NMMC made a formal request that Quartiz return its data within 30 days. Docket No. 23-7; *see also* Docket No. 23-8 at 8, Docket No. 9 at 5. A month later, Quartiz requested a two-week extension to consult with its attorneys and get an official response. Docket No. 23-8 at 6-7. After more back and forth, Quartiz sent NMMC an official response on November 11, 2022, stating that "the format of the data requested [was] not agreeable to Quartiz," and that the "systems and servers requested via the Data Demand Letter contain[ed] proprietary software components and programs other than" NMMC's data. Docket No. 23-9. Specifically, Quartiz contends that it configured the database using several "intellectual property assets," including "operating system licenses obtained from third parties" and "numerous computer programs that are embedded in the database." Docket No. 24 at 3-4.

On November 15, 2022, NMMC made another request for its data, the PeopleSoft database, and its configurations. Docket No. 23-8 at 3. Quartiz responded the next day, stating

2

that this was the first instance in which NMMC/its representatives had made a "data-only request" and that it would work to find a format in which to send the data that was satisfactory to Quartiz. *Id.* at 2. On November 18, Quartiz stated that it was willing to provide the data in "comma delimited electronic format files." *Id.* NMMC responded on November 21, stating that this format was not acceptable and requesting that Quartiz provide the data as a .tar file with .dmp and .log files, as had been done previously. *Id.* at 2. NMMC contends that this request was a compromise as their initial request was for Quartiz to provide the data using Amazon Web Services ("AWS"). Docket No. 9 at 5. NMMC wrote again on November 28, seeking an update on the progress of its request; Quartiz responded that there was no update and that a full legal review would be necessary. Docket No. 23-8 at 1.

Unable to come to a resolution, NMMC initiated this suit on December 5, 2022 in the Circuit Court of Lee County, Mississippi. Its Complaint alleges that Quartiz breached the terms of the Agreement by "failing to return NMMC's data." Docket No. 9 at 8; *see also* Docket No. 2 (NMMC's state court Complaint). On January 3, 2023, Quartiz removed the case to federal court. Docket No. 1. The next day, NMMC filed the present Motion for Preliminary Injunction and Expedited Hearing. Docket No. 8. After conferring with the parties on scheduling, the Court held an evidentiary hearing on March 27, 2023. Since that time, the parties have filed numerous other motions, including Quartiz's motions for preliminary injunction, Docket No. 60, and temporary restraining order, Docket No. 84. Those motions are the subject of another Order which will issue after a hearing. This Order resolves only the Plaintiff's Motion for Preliminary Injunction and Expedited Hearing, Docket No. 8.

## II.     Legal Standard

The familiar preliminary injunction standard applies.

3

> To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252–53 (5th Cir. 2009) (quotation marks and citations omitted). Because "[a] preliminary injunction is an 'extraordinary remedy,'" *Texans for Free Enterprise v. Texas Ethics Commission*, 732 F.3d 535, 536 (5th Cir. 2013), it "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water Ass'n,* 577 F.3d at 253 (citation omitted).

**III.     Discussion**

    *A.     Substantial Likelihood That It Will Prevail on the Merits*

First, NMMC must show a substantial likelihood that it will prevail on the merits of its underlying breach of contract claims. NMMC has not done so.

To prevail on a breach of contract claim under Mississippi law, NMMC must show (1) the existence of a valid and binding contract; and (2) that the Defendant has broken or breached it. *See Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (explaining elements). The existence and validity of the contract and its accompanying Statement of Work, Docket No. 8-1 at 14, has been plainly established by the parties, Docket No. 4-1 and 8-1. Whether there has been a breach is another issue entirely.

NMMC contends that it has a "clear contractual right to its data and database," and that Quartiz has "breached [the Agreement] by failing to return NMMC's data." Docket No. 8 at 8. Quartiz argues that it did not breach the Agreement because (1) the Agreement requires

4

Quartiz to return only the data—not the database; and (2) the Agreement requires "mutual agreement as to a format for the return of NMMC's data," and the parties have not yet agreed on a format. Docket No. 24 at 20. NMMC counters by noting that "[w]here a contract gives the parties discretion on the manner of action, both parties have to act reasonably" and that "Quartiz cannot refuse to provide the data in a commercially reasonable manner and then claim compliance with its duties." Docket No. 26 at 3.

As a textual matter, Quartiz has the better argument. The relevant provisions require Quartiz to deliver only the "data" to NMMC. Docket No. 8-1 at 15. The agreement defines the "data" that is subject to return as "all data, records and reports relating to [NMMC's] Business." *Id*. That definition does not include "database." And, as Quartiz points out, "data" is not the same as a database. Docket No. 24 at 20. "Data" is that "factual information (such as measurements or statistics) used as a basis for reasoning, discussion, or calculation." *Data*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/data. Data is placed into a "database," which collects and organizes the information "for rapid search and retrieval." *Database*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/database.

Importantly, the evidence that the parties submitted in connection with the present motion and response make clear that NMMC previously understood the "data" to be separate from the "database." In his November 15, 2022 Data Demand Email to Quartiz, Bruce Toppin, NMMC's Chief Legal Officer, explained that the request "is quite simple": NMMC wanted a "[c]opy of all NMHS PeopleSoft data *in* the database." Docket No. 23-8 at 3 (emphasis added).

5

But the textual analysis only gets us so far. It says nothing about how to resolve a dispute where the parties refer to two different *databases*. That appears to be the central disagreement here: Quartiz would like to not turn over the database that it stood up using programs that it licensed "from other vendors and other intellectual property predating or developed outside the scope of the agreements between Quartiz and NMMC." Docket No. 24 at 22. But NMMC claims that it seeks a different database. As it argued at the March 27, 2023 hearing, NMMC simply wants access to "the PeopleSoft database" that it licenses from Oracle. Transcript at 143–44. In its representations before this Court, NMMC has not suggested that the Quartiz-created database would be subsumed within the term "data" as used in the contract. Nor does NMMC suggest that the Quartiz-created database would fall under "records and reports" as used in the contractual definition.

The so-called "Toppin email" confirms that reality. In addition to the "data in the database," Toppin also requested a "[c]opy of the PeopleSoft application database including configurations." Docket No. 23-8 at 3. He explains that the "configurations" to which he refers are "standard PeopleSoft configurations that any customer licensed to use their software can do." *Id*. That definition would not apply to the database that Quartiz created using other, non-standard tools or programs.

Thus, for the purposes of this preliminary injunction motion, the Court finds that the Quartiz-created database with its embedded programs does not qualify as "data" under the terms of the Agreement. However, the standard, NMMC-licensed PeopleSoft database, stripped of the embedded programs, would so qualify.

Next, the parties disagree about the format in which the data must be returned under the terms of the Agreement. The Agreement simply provides that the data is to be returned

6

"in a mutually agreeable electronic format." Docket No. 8-1 at 15. NMMC makes a strong argument that this provision requires the parties to negotiate in good faith, particularly when one party, here Quartiz, has "a financial incentive to use bad faith." Docket No. 26 at 4. But NMMC has not shown how Quartiz has engaged in bad faith. The parties' disagreements on format appear to stem largely from a disagreement over what database is being requested and whether that database constitutes "data" under the terms of the Agreement. Now that the parties have more guidance on that score, the parties' discussions of "a mutually agreeable electronic format" might prove more fruitful.[1]

### B. *NMMC Has Not Shown Irreparable Injury*

NMMC has also not met its burden on the "irreparable injury" element. It is well established "that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (citing *Interox Am. V. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)). Thus "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (internal citations, quotations, and brackets omitted).

NMMC argues that its irreparable injuries are three-fold. First, NMMC says that it may incur financial penalties, regulatory violations, and loss of goodwill for failure to update its tax information in a timely manner. Docket No. 26 at 9-11. Second, NMMC contends that "holding another's property for ransom is itself a substantial threat or irreparable harm that

---

[1] It is important to note that the Court's conclusion as to the likelihood of success prong "does not represent a final determination on the merits." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 623 (5th Cir. 1985). "It is true that the [] terms of the contract are complex, and protracted litigation over the interpretation of the contract terms may well ensue." *Id.*

requires a mandatory injunction." *Id.* at 9. Lastly, NMMC avers that the PeopleSoft database requires an update that it will have to pay Quartiz to install—arguing, in essence, that Quartiz can continue to extort it. *Id.* at 11-12. While the Court appreciates the significance of these concerns, none qualifies as irreparable injury that cannot be cured by monetary damages.

First, as of the hearing on this motion, both parties concede that the requisite tax updates were completed within the relevant deadlines. That concession moots NMMC's first argument: Because the updates were completed within the deadline, the Court does not see how NMMC might incur financial penalties from any regulatory agency for non- or untimely compliance. But even if they did, those penalties could be easily measured, and money damages could be awarded to remedy them.

Second, the only binding law that NMMC cites on the issue of loss of access to property posing an irreparable injury is *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012). Docket No. 26 at 9. But that case is wholly different from this one. That case concerned the loss of real property and a violation of the movant's First Amendment rights. While the court found that such losses and violations would constitute irreparable injury, that is not the case at bar. *Opulent*, 697 F.3d at 295. Here, no loss of real property or violation of constitutional rights has been alleged. Nor has NMMC put forward any evidence (or even a substantial argument) as to the extent of its "loss of access" or how that amounts to irreparable injury.

Lastly, the injury that NMMC might incur from having to pay Quartiz to update its PeopleSoft software can plainly be resolved through monetary damages.

As such, the Court finds that there is no substantial threat that NMMC will suffer an irreparable injury if the preliminary injunction is not granted.

8

Because a party seeking a preliminary injunction must satisfy each of the required elements to be entitled to that extraordinary relief, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) the Court need not reach the final two factors.

### C.  *Defendant's Motion for Leave to File Surreply*

Quartiz seeks to file a surreply to respond to arguments raised in NMMC's Reply about the effect of a license on its use of the Quartiz-created database. Docket No. 63. Surreplies are "heavily disfavored" by courts. *See Warrior Energy Servs. Corp. v. ATP Titan M/V,* 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (per curiam) (quoting *Weems v. Hodnett,* No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011)). Whether to allow a surreply is within the discretion of the district court, and is appropriate "only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Makhlou v. Tailored Brands, Inc.*, 2017 WL 10922311, at *5 (S.D. Tex. Mar. 23, 2017) (collecting authority).

Here, a surreply is unnecessary because the contested arguments did not factor into the Court's resolution of the preliminary injunction motion, and parties' ample pleadings in this case sufficiently brief the license issue. Thus, Quartiz's motion is denied.

## IV. Conclusion

For these reasons, NMMC's motion for preliminary injunction is **DENIED**. Quartiz's Motion for Leave to file Surreply is also **DENIED**.

**SO ORDERED**, this the 8th day of June, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
