**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**NORTH MISSISSIPPI MEDICAL CENTER, INC.**                  **PLAINTIFF**

**v.**                            **CIVIL ACTION NO. 1:23-cv-00003-CWR-LGI**

**QUARTIZ TECHNOLOGIES,
a d/b/a of Value Ascent Inc.**                                       **DEFENDANTS**

## ORDER

Before the Court is *Defendant's Motion to Stay Proceedings* [143] filed by Quartiz Technologies, d/b/a Value Ascent, Inc "Defendant" or Quartiz"). On August 9, 2023, this Court denied Defendant's Motion for Preliminary Injunction[1]. On September 7, 2023, Defendant filed an appeal of this Court's denial. *See* Doc. [130], Notice of Appeal. On November 24, 2023, Defendant filed the instant motion, requesting that the Court stay proceedings until there has been full and final resolution of the pending appeal. Doc. [143]. Plaintiff North Mississippi Medical Center ("Plaintiff" or "NMMC") filed a Response in Opposition [148], and Defendant filed a Reply [154] in Support of its initial motion. The Court, having considered the submissions, the record and relevant law, finds that Defendant's Motion to Stay [143] should be DENIED, as discussed below.

     a. **Standard**

Motions to stay proceedings pending an interlocutory appeal under 28 U.S.C. § 1292(a)(1) are made pursuant to Federal Rule of Civil Procedure 62(c), which provides, in pertinent part:

     Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or

---

[1] In its Order [126], this Court also denied Defendant's *Emergency Motion for Temporary Restraining Order and Expedited Hearing* [84].

1

final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. Fed. R. Civ. P. 62(c). "Rule 62(c) provides an exception to the necessity for finality as a condition precedent to appeal." *Gray Line Motor Tours, Inc. v. City of New Orleans*, 498 F.2d 293, 296–98 (5th Cir.1974). "Generally, the district court lacks the authority to alter an injunction pursuant to Fed. R. Civ. P. 62(c) once an appeal has been filed except to maintain the "status quo" of the case by securing the rights of the party adversely affected by the district court's decision." *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir.1989). "The district court's granting of a stay of an equitable order is an extraordinary device which should be granted sparingly." *U.S. v. State of La.*, 815 F.Supp. 947, 948 (E.D.La.1993). *See also U.S. v. State of Tex.*, 523 F.Supp. 703, 729 (E.D.Tex.1981) (Stay of equitable order should be granted sparingly because stay of decisions granting equitable relief pending appeal interrupts ordinary process of judicial review and postpones relief for prevailing party at trial).

The factors the court assesses when considering a motion to stay are substantially similar to those weighed when determining whether to grant a preliminary injunction, and the movant bears the burden of showing the balance of equities weighs heavily in favor of granting the stay. *U.S. v. Baylor University Medical Center*, 711 F.2d 38, 39 (5th Cir.1983). To determine whether to grant a stay, courts must evaluate: (1) whether stay applicant has made strong showing that he is likely to succeed on merits; (2) whether applicant will be irreparably injured absent stay; (3) whether issuance of stay will substantially injure the other parties' interest in the proceeding; and (4) whether granting the stay serves the public interest. *Drummond v. Fulton County Dep't of Family and Children's Services*, 532 F.2d 1001, 1002 (5th Cir.1976).

**b. Analysis**

Defendant urges the Court to stay proceedings, pending the appellate court's ruling on its appeal. Defendant submits that a stay is necessary, because "the outcome of the appeal would affect the entire case." Doc. [144] at 1. It asserts a stay is necessary for judicial economy and conservation of resources. *Id*. at 2. While recognizing that the Court has discretion to enter a stay, Defendant also contends that the Court may "be required to enter a stay," citing to *Coinbase, Inc. v. Bielski*, 599 U.S. 736, a case involving appeal of a District Court's denial of a motion to compel arbitration.[2] Defendant also relies upon 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.17, p. 7 (2d ed., Supp. 2022), asserting that the cited authority – which also pertains to arbitration – applies here as "the issues that will be addressed by the Fifth Circuit on this appeal are central to every claim and defense raised in this case." *Id*. at 3. Defendant also points to the Congressional intent of stays, specifically addressing non-stay provisions and noting "there is no non-stay provision applying to appeals from denials of preliminary injunctions." *Id*. at 4. It asserts that the subject preliminary injunction involves all or substantially all the case before the Court, which it argues supports a stay. *Id*. at 5.

Despite Defendant's belief that an automatic stay is required, it also argues the requested stay is warranted under the discretionary stay factors. Plaintiff, on the other hand, argues the limited issue on appeal – "whether or not Quartiz is entitled to temporary equitable relief [i.e. injunction] while this matter proceeds through discovery" – does not require a stay of the

---

[2] Defendant provides the following summation of Coinbase in support of its reliance on the case.
> In *Coinbase, Inc. v. Bielski*, 599 U.S. 736, *Coinbase* moved to stay District Court proceedings pending resolution of its appeal of the District Court's denial of it [sic] motion to compel arbitration. The Court granted certiorari to resolve a disagreement among the Courts of Appeal as to whether an appeal from the denial of a motion to compel arbitration acts as an automatic stay of proceedings in the lower court. The Federal Arbitration Act contains a statutory exception to the usual rule that parties may not appeal before final judgment—just as is the case with the appealability of grants or denials of injunctive relief.

Doc. 144 at 2-3.

proceedings. Doc. [149] at 4.

The Court considers the relevant law and factors pertinent to consideration of a stay pending appeal.

**(1) Whether the stay applicant has made a strong showing that it is likely to succeed on the merits.**

As to this factor, Defendant submits that this issue has been fully briefed and therefore it adopts its prior arguments made in support of its position. *Id*. at 6. However, Defendant specifically "reiterates that NMMC has admitted to Quartiz's interpretation of the contractual language at issue." *Id*. For context regarding the disputed "contractual language" and Defendant's prior arguments, the Court incorporates below portions of this Court's factual summary, as set forth in the Order [126] denying Defendant's Preliminary Injunction.

> In August 2018, North Mississippi Medical Center, Inc. ("NMMC") entered into a Master Services Agreement with Quartiz Technologies to configure and manage a cloud-based database for three years. Docket No. 60-1. Prior to that Agreement, NMMC used the commercial software PeopleSoft to perform many of its core data functions. Docket No. 9 at 4. The Agreement transferred most of NMMC's data management needs to Quartiz. In particular, the Agreement provided that Quartiz would move NMMC's PeopleSoft database to the cloud, configure the database for optimal functionality, and manage the data for the duration of the contract term. Docket No. 60-1.

> Everyone agrees that Quartiz did all those things successfully for the duration of the contract. Docket No. 123 at 15. But at some point in the late summer or early fall of 2021, NMMC sought to bring its data hosting and management services back in-house. Docket No. 123 at 139-40; Docket No. 123 at 93. Quartiz objected. Eldo Mathew, one of Quartiz's founders and its lead on the NMMC contract, explained to Larry Flippo, NMMC's then-Director of Business Applications, that moving the services in-house was not what they had agreed upon, and that the parties would need to "revisit that decision later." Docket No. 123 at 141. No such follow-up appears in the record.

> In the spring of 2022, however, NMMC began taking steps to move its data functions in-house and integrate the system with its larger electronic medical records system, which it calls EPIC. The parties disagree about the sequence of events, but the record provides a few hard dates. For example, the record shows that NMMC entered into a Master Services Agreement with a Massachusetts

4

> company called SpearMC Consulting, Inc. ["SpearMC"], on March 18, 2022. *See* Docket No. 118, D-10. A couple of months later, on May 20, 2022, NMMC and SpearMC entered their first Statement of Work, which specified that SpearMC would provide Amazon Web Services ("AWS") migration services, among other things. *Id*. Around the same time, emails between Daphne Clement, NMMC's IT Business Manager, and Mathew show that NMMC requested a full database backup from Quartiz on Friday, May 13, 2022. *See* Docket No. 118, D-7. Quartiz provided that backup five days later. *Id*.
>
> The parties spar over whether NMMC requested the database backup with the intent of sharing it with SpearMC or whether it was solely for "security and auditing," as Clement averred in her May 13th email. *Id*. (Clement wrote, "[w]e are working with Security and Auditing and need [a database export data dump or database export] to be provided to us to be kept on-site"). Regardless of the reason for the request, though, no party disputes that NMMC provided SpearMC with access to the database backup shortly after NMMC received it from Quartiz. SpearMC has been using the database backup to complete its work on NMMC's EPIC migration ever since. Docket No. 123 at 62.
>
> Quartiz now wants to stop NMMC from using the database backup. In its motion for preliminary injunction, Quartiz seeks to have NMMC return the database backup and destroy any copies NMMC may have made. *See* Docket No. 61. The motion for a temporary restraining order is somewhat narrower; it seeks to have NMMC discontinue its use of the database backup, including in the EPIC system. *See* Docket No. 85. Quartiz alleges that the database backup contains its intellectual property, and that NMMC's continued use of the backup is a violation of the "Ownership & Use of Deliverables" provision of the parties' Agreement.
>
> That provision addressed the intellectual property rights of the contracting parties. By its terms, it expressly protected NMMC's "sole ownership of all Intellectual Property Rights in connection with any original material it provides to [Quartiz] for use within a Deliverable," and gave NMMC "a perpetual, non-exclusive and non-transferable license to use, copy, reproduce, display, or distribute the Deliverable." Docket No. 60-1 at 2. But it also explained that "each party [would] retain exclusive interest in and ownership of its Intellectual Property developed before the execution of th[e] agreement and outside the scope of th[e] agreement." *Id*.
>
> The parties disagree about the meaning of the "exclusive interest" clause of the provision. NMMC says the clause does not prohibit its use of the database backup. *See* Docket No. 85.

Order, Doc. [126] at 1-4.

Plaintiff responds in opposition, arguing that Quartiz is not likely to succeed on the merits, as Defendant merely relies on its prior arguments, which this Court rejected in its Order denying

5

the motion for preliminary injunction. *Id*. 5. Plaintiff also asserts that this Court "found that Quartiz has not shown that it is substantially likely to prevail on the merits" and that "Quartiz has not shown irreparable injury." *Id*. at 5; Doc. [126] at 5, 7. Plaintiff notes that the applicable standard of review on appeal is abuse of discretion, and it contends that it is highly unlikely that the appellate court "would find that this Court abused its discretion in deciding both of the most important prongs required for preliminary injunction." *Id*. at 5. Thus, Plaintiff argues this factor weighs against a stay. *Id*.

In its Reply [154], Defendant asserts that Plaintiff's reliance on *Nken v. Holder*, 556 U.S. 418, 427, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) is misplaced, and it argues although the *Nken* court provided that a party seeking a stay must make a "strong showing of the likelihood of success," that Court did not explain the meaning of "strong showing." Doc. [154] at 1, 3. Rather, Defendant argues its burden here is lesser than that imposed on a movant seeking preliminary injunction. *Id*. at 2. Defendant concludes that the actual requirement is more than a mere possibility of success but not that success is more likely than not. *Id*. And, it asserts that Quartiz has met this "lesser" burden. *Id*.

At the time of this Court's Order [126] denying Defendant's motion for preliminary injunction, Quartiz had asserted six counterclaims. *See* Doc. [61] at 17-22; Doc. [85] at 19-24. This Court previously noted:

> As Quartiz explains it, the "bulk" of its claims "arise from the fact that the database backup in question contains intellectual property belonging to it and others" and that such intellectual property is "subject to copyright protection." Docket No. 61 at 11. Quartiz believes that NMMC has no right to possess or use the database (or the embedded intellectual property) beyond what is provided for in the Agreement.
>
> NMMC responds that it had a license to use the backup database under the terms of the Agreement. . . . Whether NMMC has a license to possess and/or use the database backup is central to the resolution of Quartiz's counterclaims: if NMMC has a license, it has neither breached the contract, converted Quartiz's intellectual

6

> property, nor misappropriated Quartiz's alleged trade secrets. Such a finding would be fatal to Quartiz's counterclaims. That is why Quartiz argues that NMMC has no such license. *See* Docket No. 105 at 8–15.

Order [124] at 6. Based on this analysis, this Court previously found that "Quartiz [at this juncture] ha[d] not shown that it is substantially likely that NMMC lacked a license." *Id*. at 7. And this Court determined that "Quartiz ha[d] not satisfactorily shown how [the exclusive interest clause] negates the perpetual license clause that immediately precedes it." *Id*. Ultimately, this Court declined to decide the licensing issue at that time, but it did find that "Quartiz ha[d] not demonstrated a 'substantial' likelihood of success on the merits to be entitled to a preliminary injunction."

Considering that the Defendant expressly relies on its prior arguments and offers nothing further, the Court once again concludes that Quartiz has not made a strong showing that it is likely to succeed on the merits.

**(2) Whether the applicant will be irreparably injured absent a stay.**

Defendant asserts that both Quartiz and Plaintiff face the prospect of expending substantial amounts of time and money litigating this case, which may ultimately have its issues narrowed substantially. Doc. [144] at 7. Yet again, Defendant relies on *Coinbase* – which dealt with a motion to compel arbitration – in support of its claim that Quartiz will suffer irreparable harm, averring that "allowing a case to proceed simultaneously in the district court and the court of appeal creates the possibility that the district court will waste scarce judicial resources. . . ." *Id*. And, it asserts concerns that Plaintiff, as "a company with over a billion dollars in annual revenue is litigating against a small business" – Quartiz. *Id*.

As an initial response to Defendant's claims that it will suffer irreparable harm, Plaintiff submits "an injury is 'irreparable' only if it cannot be undone through monetary remedies." Doc.

7

[149] at 5. To this end, Plaintiff argues Defendant will not be irreparably harmed, as "mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." Doc. [149] at 7. (Citation omitted). Plaintiff contends neither party will be irreparably harmed by expending time and money litigating the case, "because no matter the outcome of the appeal, this case will not be resolved[,]" and "costs of litigation will eventually be incurred with or without a stay." Doc. [149] at 7. Plaintiff contends that Defendant's argument here is contradicted by both binding and persuasive authority. As to this factor, Plaintiff urges a finding against granting a stay.

In its reply, Defendant addresses this Court's previous order denying injunctive relief, asserting its disagreement with the finding that the ability to place a value on Defendant's intellectual property does not mean that monetary damages would provide Quartiz with an adequate remedy at law. Doc. [154] at 6. Pointing to Fifth Circuit case law, Defendant argues "it is not so much the magnitude but the irreparability that counts for the purposes of a preliminary injunction." *Id*. at 7 (quoting *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Further, it contends "even speculative reputational harm is enough to justify the grant of a preliminary injunction." *Id*. It contends there is potential for substantial damage to Quartiz's relationships with its contractors if Plaintiff discloses Quartiz's intellectual property to third parties without Quartiz's knowledge or consent. *Id*. at 8. It argues that NMMC's disclosure of its intellectual property to SpearMC, a competitor, "serves as an existential threat to Quartiz's business. *Id*.

"In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022) (citation omitted). "In short, [t]he key word . . . is irreparable, and an injury is irreparable only if it cannot be undone through monetary remedies." *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304

8

(5th Cir. 2017). "In order to show irreparable injury, the defendant must show more than [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm." *United States v. Stanley*, No. 5:11-CV-117 DCB MTP, 2013 WL 6330505, at *4 (S.D. Miss. Dec. 5, 2013) (citing *Dennis Melancon v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir.2012) (internal quotations removed)).

      This Court, after an evidentiary hearing on Defendant's motion for preliminary injunction, determined "that money damages could be calculated relatively easily," and therefore, "the fact that adequate compensatory relief will be available later weighs heavily against a claim of irreparable harm." Doc. [126] at 8. This Court also found that Quartiz's assertions of harm were "merely speculative." *Id*. at 8-9. The Court now reissues this finding, noting that Quartiz, at this juncture still provides no evidence of irreparable harm, just speculation of such.

      In addition to money damages, Defendant also contends it will suffer reputational injury. The Court notes the Fifth Circuit has previously determined that "[r]eputational injury . . . do[es] not necessarily constitute irreparable harm." *Burgess*, 871 F.3d at 304. Moreover, the Court now notes that after its denial of injunctive relief, Defendant filed the instant motion and a separate motion to join third-party, SpearMC. *See* Docs. [145], [166][3]. This Court granted Defendant's Motion [166] to join, and on April 16, 2024, Defendant filed its Third Amended Counterclaim, wherein it added to this action claims against SpearMC Management Consulting. *See* Docs. [190], [191]. Adding SpearMC to the action increases the likelihood for compensatory relief and further diminishes Defendant's argument that it will suffer irreparable harm.

---

[3] Amended Motion to Join SpearMC. Doc. [166]

Quartiz has failed to establish a likelihood of irreparable harm. Thus, this factor weighs against granting the requested stay.

**(3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding.**

Defendant argues Plaintiff will face no harm from the grant of a stay. Doc. [144] at 8. It asserts without the injunctive relief "NMMC is free to do what it pleases with the backup database in its possession." *Id*. at 8. Quartiz does, however, acknowledge that Plaintiff advanced two harms – "their inability to control their own PeopleSoft system and the inability to link their new electronic health records system to their PeopleSoft system when that electronic health record system goes live early next year." *Id*. Defendant contends "a stay in the proceedings simply will not change the fact that, unless NMMC builds out i[t]s own PeopleSoft system, the management and hosting of the PeopleSoft system will still be controlled by Quartiz at the time that NMMC takes its new health record system live." *Id*. at 9.

Plaintiff argues a stay would result in inherent harm, which would cause additional harm to NMMC. Doc. [149] at 7-8. Plaintiff asserts that Defendant's failure to provide the requested data to NMMC has resulted in Plaintiff's loss of control of sensitive business data and loss of control of its core functions, which it contends is irreparable injury. *Id*. at 8. Additionally, Plaintiff contends Defendant is holding NMMC's property hostage, causing NMMC to make monthly payments to Quartiz for services it does not want, just so it can maintain access to its own database. *Id*. at 8-9. Plaintiff also argues that it cannot back up its own data, and Quartiz refuses to provide the backups to NMMC. *Id*. at 9. Thus, Plaintiff is at the mercy of Quartiz, and it urges the Court to deny this motion and maintain the current case management schedule. *Id*.

In its reply, Defendant argues NMMC's contentions are a recitation of its previous arguments, which were rejected by this Court. Doc. [154] at 9. It argues Plaintiff has not

10

demonstrated any need for the backups that it claims to need. *Id*. Therefore, Defendant argues that it is nothing more than "[a]n imagined harm" for which NMMC has made no showing of its need for the backups. *Id*.

The Court notes that Defendant acknowledges the harms stated by NMMC, and in response, it offers a solution that ultimately results in Quartiz continuing its control over the database unless its terms are met. Defendant suggests that NMMC "could, if it chose to do so, take the data offered by Quartiz and rebuild its PeopleSoft system – it has simply chosen not to do this." Doc. [144] at 8. The Court recognizes the ironic and contradictory nature of Defendant's arguments that Plaintiff would not suffer irreparable harm. Thus, it finds that Defendant has not shown that the stay would not injure NMMC. Thus, this factor weighs against a stay.

**(4) Where the public interest lies.**

Defendant argues this factor favors a stay, because the interest of the public lies with preserving judicial resources. Doc. [144]. It asserts staying the proceeding pending the Fifth Circuit's decision will likely narrow the issues and lead to less discovery, less complicated dispositive motions and less trial time, which are all in the public's interest. *Id*. Defendant also contends the appeal taken "implicates the fundamental public policy in Mississippi that contracts should be enforced," and both state and federal public policy promote protection of intellectual property. *Id*. Finally, Defendant asserts that a stay would promote a working relationship amongst the parties, as they are currently involved in an extensive project related to the PeopleSoft database. *Id*.

Plaintiff contends allowing discovery to proceed during the interlocutory appeal promotes the speedy resolution of this matter, which favors public interest. Doc. [149] at 10. Plaintiff also challenges the cases relied on by Defendant to support its position that public interest favors a stay,

11

noting that the cases cited dealt with issues regarding class actions. *Id*. Plaintiff distinguishes issues from the instant action and also notes that the pending appeal will not resolve the ultimate questions in this case. *Id*. Plaintiff argues this factor weighs against a stay.

Quartiz replies, reiterating judicial economy. Doc. [154] at 10. It also reasserts its previous argument, as set forth in its motion for injunctive relief, that NMMC is not entitled to possess a license to the intellectual property at issue under the terms of the agreement. *Id*.; Doc. [60], [61]. And it argues "if the Fifth Circuit agrees . . ., then th[e] narrowing of the scope of the issues before this Court would, alone, mean this factor weighs heavily in favor of granting a stay." *Id*.

The Court disagrees. While the Court favors judicial economy and also promotes speedy resolution, it finds that allowing discovery to proceed best promotes public interest. The limited issue on appeal will not fully resolve this case. Thus, the Court finds that this factor weighs against granting a stay.

   c. **Conclusion**

The Court, being "mindful that a stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right," and having considered the factors laid out by the Supreme Court, concludes that a stay is not warranted. *Paxton* at 763 (citing *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (internal quotation marks and brackets omitted). Therefore, the instant motion for stay pending a ruling on the appellate motion is denied.

IT IS THEREFORE ORDERED that *Defendant's Motion to Stay Proceedings* [143] is hereby DENIED.

**SO ORDERED**, this the 17th day of May, 2024.

/s/LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE