### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

NORTH MISSISSIPPI MEDICAL
CENTER, INC.,

     *Plaintiff,*

*v.*

QUARTIZ TECHNOLOGIES, a d/b/a of
VALUE ASCENT INC.,

     *Defendant/Counter-Plaintiff,*

*v.*

SPEARMC MANAGEMENT
CONSULTING, INC.,

     *Counter-Defendant.*

CAUSE NO. 1:23-CV-3-CWR-LGI

### ORDER

On April 29, 2025, this Court resolved NMMC and SpearMC's motions to dismiss. Docket No. 215. In so doing, it found that Quartiz had not plausibly alleged that NMMC's license excluded access to the database backup. It also found that Quartiz had not plausibly alleged that NMMC breached the Master Services Agreement ("MSA") by distributing the database backup to SpearMC. This resulted in the dismissal of Quartiz's counterclaims against NMMC and SpearMC.

Quartiz believes the Court erred in its decision. The current motion requests that the Court alter or amend the judgment or certify this matter for an interlocutory appeal. Docket No. 216. With respect to Quartiz's request for alteration or amendment, the motion is granted

in part and denied in part. With respect to Quartiz's request for certification of an interlocutory appeal, the motion is denied.

## I.      Legal Standards

### A.      Motions to Alter or Amend Judgment

The Federal Rules of Civil Procedure allow a party to seek to alter or amend a judgment upon a motion filed within 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citation modified). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.*

### B.      Motions for Interlocutory Appeal

A court may certify an interlocutory appeal if "(1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007) (citing 28 U.S.C. § 1292(b)).

## II.      Discussion

Quartiz believes that this Court misinterpreted its argument around Section 10 of the MSA. Quartiz argued that "it holds an *exclusive interest* in the intellectual property developed 'prior to' or 'outside the scope of' the agreement, not *exclusive ownership*." Docket No. 217 at 2 (emphasis in original). Relying on this argument, it maintains that it "gave NMMC a non-exclusive license to the 'Deliverable' but explicitly reserved to itself all interest in any intellectual property it developed before or outside the scope of the agreement." *Id.* at 3.

Quartiz is correct on this point. Page four of the Order will be modified to read "Quartiz maintains that Section 10's 'exclusive interest language' granted it sole *interest in* its intellectual property, including any intellectual property now integrated into the database backup."

But this modification does not warrant the ultimate relief Quartiz seeks. No matter who retained legal ownership of the Deliverable, Quartiz failed to plausibly allege that the "exclusive interest language" limits NMMC's "perpetual, non-exclusive and non-transferable license to use, copy, reproduce, display, or distribute" it. Docket No. 191-1 at 2.

According to the MSA, both Quartiz and NMMC retained "exclusive interest in and ownership of its Intellectual Property developed before the execution of this agreement or outside the scope of this [MSA]." *Id.* Quartiz focuses on "exclusive interest" to support its argument that NMMC could not possess a license to the Deliverable. In its view, it was impossible for NMMC to maintain any interest because Quartiz maintained exclusive interest. Quartiz's reading, however, discounts the rest of that sentence: "Intellectual Property *developed before the execution of this agreement or outside the scope of this [MSA]." Id.* (emphasis added). Contrary to Quartiz's belief, this language is crucial to the issue before the Court.

Quartiz existed before entering the MSA with NMMC. The exclusive interest language allows it to maintain the "exclusive interest" in everything it owned, created, or used before it entered the MSA with NMMC. Quartiz also maintains the "exclusive interest" in anything it owned, created, or used since entering the MSA that does not relate to its dealings with NMMC. But the Court does not believe that Quartiz maintains the exclusive interest in anything it owned, created, or used in preparing the Deliverable.

3

Let's look at this practically. Quartiz prepared a product for NMMC and granted NMMC a license to use, copy, distribute, reproduce, or display that product. Quartiz cannot now argue that NMMC's license excluded access to the source code necessary to use the product because withholding that source code nullifies the license granted. Quartiz also cannot argue that NMMC is prohibited from accessing the information necessary for it to copy or reproduce the product because that would also render NMMC's license useless. For all provisions of the MSA to have effect, NMMC's license must include access to the material necessary for it to "use, copy, reproduce, distribute, or display" the Deliverable.

That said, the Court will grant Quartiz's motion as to the factual finding on page four of the previous Order. As Quartiz has not presented manifest errors of law or fact, the motion is denied as to all additional requests to alter or amend.

Quartiz's motion to certify this matter for an interlocutory appeal will be denied. "Requests to certify an interlocutory appeal are rarely granted." *Mills v. UPS Store, Inc.*, No. 3:19-CV-364-CWR-FKB, 2021 WL 12093298, at *2 (S.D. Miss. Nov. 10, 2021). The Court is not persuaded that there is substantial ground for difference of opinion on Section 10 of the MSA. The Fifth Circuit has considered the MSA and affirmed this Court's finding that Quartiz had not shown a substantial likelihood of succeeding on the merits. *See N. Miss. Med. Ctr. v. Quartiz Techs.*, No. 23-60483, 2025 WL 980568, at *3 (5th Cir. Apr. 1, 2025). The Fifth Circuit reasoned that Quartiz had not offered "an interpretation that gives effect to both the Exclusive Interest Clause and Perpetual License Clause of the MSA." *Id.* at *5 (citation modified). It is also doubtful that an immediate appeal would advance the ultimate termination of this litigation. Quartiz "has not met the high standard necessary to secure an

4

interlocutory appeal." *Mills*, 2021 WL 12093298, at \*2. The better course is for the parties to continue the instant proceedings.

### III.    Conclusion

The Court hopes this Order will aid the parties in resolving this matter. As noted in the briefing, additional costs are incurred with each motion filed.

Quartiz's position is understandable. It believed that its dealings with NMMC were going well, yet NMMC abruptly chose to end the relationship. NMMC then expected Quartiz to help it establish services with a competitor, SpearMC. Still, Quartiz has not plausibly alleged that NMMC's decision breached the MSA. NMMC is entitled to use the product that it paid for.

If the parties wish to proceed here, they are directed to contact the chambers of the Magistrate Judge within 10 days to coordinate a scheduling conference.

**SO ORDERED**, this the 31st day of July, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE