IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

|  |  |
|---|---|
| **NORTH MISSISSIPPI MEDICAL CENTER, INC.,** *Plaintiff,* v. **QUARTIZ TECHNOLOGIES, a d/b/a of VALUE ASCENT INC.,** *Defendant/Counter-Plaintiff,* v. **SPEARMC MANAGEMENT CONSULTING, INC.,** *Counter-Defendant.* | CAUSE NO. 1:23-CV-3-CWR-LGI |

## ORDER

Before the Court are motions to dismiss by Plaintiff North Mississippi Medical Center ("NMMC") and Counter-Defendant SpearMC Management Consulting, Inc. ("SpearMC"). Docket Nos. 195 and 204. Defendant Quartiz Technologies ("Quartiz") opposes dismissal. Having considered the parties' arguments and the applicable law, the motions will be granted.

### I. Background

NMMC and Quartiz entered into a Master Services Agreement ("MSA") in August 2018 so Quartiz could manage NMMC's PeopleSoft database in a digital cloud system. Quartiz took the necessary steps and assumed management of data contained in NMMC's

PeopleSoft database. By March 2022, though, NMMC decided to switch back to onsite hosting. It contacted Quartiz to request a backup copy of the PeopleSoft database ("the database backup"). Quartiz provided NMMC with the database backup "with the understanding that it was to be used solely for security and auditing and kept onsite at NMMC." Docket No. 196 at 3.

NMMC proceeded with moving the Peoplesoft database back onsite. It then entered an MSA with SpearMC to perform many functions previously performed by Quartiz. NMMC gave SpearMC a copy of the database backup. When they realized the database backup lacked the source code necessary to access its full functionality, NMMC asked Quartiz for the necessary source code.

Quartiz didn't share the source code. Instead, it alerted NMMC and SpearMC that it believed their new MSA violated the MSA between Quartiz and NMMC. It therefore requested that NMMC and SpearMC destroy or return any copies of the database backup in their possession. Neither complied with Quartiz's request. This suit followed.

NMMC alleges that Quartiz breached the original MSA by failing to provide it with access to its data integrated into the database backup. Quartiz responded with counterclaims against NMMC and claims against SpearMC for (1) breach of the MSA, (2) tortious interference with contract, (3) tortious interference with business relationship, (4) conversion, (5) misappropriation of trade secrets under the Mississippi Uniform Trade Secrets Act, (6) misappropriation of trade secrets under the Defend Trade Secrets Act, (7) per se liability under the Mississippi Computer Crimes and Identity Theft Act, (8) breach of duty of good faith and fair dealing, and (9) civil conspiracy.

NMMC and SpearMC have separately moved to dismiss Quartiz's counterclaims against them. Both assert that NMMC has a license to use and distribute the database backup that NMMC received from Quartiz. The parties' respective positions are addressed below.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss an action for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

"Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the [counter-plaintiff], but [counter-plaintiffs] must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).

## III. Discussion

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Cap. City Ins. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire & Marine Ins. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

### A. Quartiz has not plausibly alleged that NMMC's license excluded access to the database backup.

Quartiz believes that NMMC lacked a license to the database backup. It points to the "exclusive interest" language in its MSA as proof that NMMC is barred from utilizing the intellectual property within the database backup. It also argues that the parties' modification of responsibilities through a Statement of Work ("SOW") reinforces its view. NMMC

3

responds that its license granted through the MSA extends to all information contained within the database backup.

To resolve the parties' disagreement, the Court must "first look to the express wording of the contract itself, looking at the contract as a whole, to the exclusion of extrinsic or parol evidence." *Cherokee Ins. v. Babin*, 37 So. 3d 45, 48 (Miss. 2010). If the parties' intent is unclear, the Court may "utilize the applicable 'canons' of contract construction." *Id.*

The dispute revolves around Section 10 of the MSA. It states that:

> [NMMC] shall retain sole ownership of all Intellectual Property Rights in connection with any original material it provides to [Quartiz] for use within the Deliverable or for delivery of Services. Upon full payment, [Quartiz] grants [NMMC] a perpetual, non-exclusive and non-transferable license to use, copy, reproduce, display, or distribute the Deliverable . . . . Each party will retain exclusive interest in and ownership of its Intellectual Property developed before the execution of this agreement or outside the scope of this [MSA].

Docket No. 191-1 at 2.

Quartiz maintains that Section 10's "exclusive interest" language granted it sole interest in its intellectual property, including any intellectual property now integrated into the database backup. *Id.* For Quartiz's allegations to be plausible, the database backup and accompanying intellectual property must have been "developed before" or "outside the scope" of the MSA. *See id.* To answer that question, we must consider the services within the scope of the MSA.

Under Section 1 of the MSA, Quartiz was obligated to "provide services for purposes of maintenance, configuration, support, error corrections, installation, hosting" and related

4

services. *Id.* at 1. It was expected to perform "[s]ervices in a prompt manner and have Work Products ("Deliverable")[1] ready as specified in the SOW." *Id.* (cleaned up).

Because technology sometimes fails, the parties also decided who bore responsibility for "Backup and Disaster Recovery." Section 11 states that "[u]nless otherwise specifically stated in an SOW, backup and disaster recovery of all systems, programs, and data, are the responsibility of [NMMC]. In no event will [Quartiz] be liable for any data or program loss." *Id.* at 2.

NMMC's obligations were later modified by a SOW. The parties agreed that Quartiz would "provide Hosting Services using Amazon Web Services or [a] similar platform" beginning September 1, 2019. *Id.* at 6. This provision outlined that "[s]ervice availability, disaster recovery, hardware availability, reinstallation & repair, and other hosting matrices" would be governed by industry standards. *Id.* Quartiz also agreed that "[u]pon request by [NMMC] at any time and from time to time without regard to the default status of the parties under the [MSA], [Quartiz] shall promptly deliver to [NMMC] the [data] in mutually agreeable electronic format on the date of the request." *Id.* at 5.

This modification cuts against Quartiz's position. Crediting Quartiz's assertion that it took responsibility for backup and disaster recovery, any intellectual property integrated into the database backup relates to its ability to fulfill this obligation. Thus, Quartiz's assumption of responsibility through the SOW did not strip NMMC of the license it was granted in the MSA.

---

[1] The term "Deliverable" is not defined in the MSA. Like the Fifth Circuit, this Court recognizes that "Deliverable" is synonymous with "Work Product" which includes "data and products produced . . . including but not limited to, . . . software, databases . . . computer programs . . . to the extent provided by law." *N. Miss. Med. Ctr. v. Quartiz Techs.*, No. 23-60483, 2025 WL 980568, at *6 (5th Cir. Apr. 1, 2025).

Viewing the facts in the light most favorable to Quartiz, the exclusive interest language could not bar NMMC from possessing the database backup.[2]

### B. Quartiz has not plausibly alleged that NMMC breached the MSA by distributing the database backup to SpearMC.

To succeed on a breach of contract claim, Quartiz must prove "the existence of a valid and binding contract" and NMMC has "broken or breached it." *Bus. Comms., Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012).

Quartiz argues that NMMC's license did not allow it to share the database backup. It maintains that it provided NMMC with the database backup "with the understanding that it was to be used solely for security and auditing and kept onsite at NMMC." Docket No. 196 at 3.

Returning to the MSA, NNMC was granted "a perpetual, non-exclusive and non-transferable license to use, copy, reproduce, display, or distribute the Deliverable." Docket No. 191-1 at 2.

Quartiz has not plausibly alleged that NMMC's decision to distribute the database backup exceeded the scope of its license. By its plain language, the MSA granted NMMC the ability to "use, copy, reproduce, display, or distribute" the Deliverable (*i.e.*, the database backup). This language is clear and unambiguous, thus "this Court is not concerned with what the parties may have meant or intended but rather what they said." *Ivison v. Ivison*, 762 So. 2d 329, 335 (Miss. 2000) (cleaned up). Because the MSA granted NMMC, *among other*

---

[2] Another fact supports this position. Quartiz freely gave NMMC the database backup. Its decision to do so suggests that Quartiz understood the exclusive interest language did not bar NMMC from possessing the database backup.

6

*things*, the ability to reproduce and distribute the Deliverable, Quartiz has not plausibly alleged how NMMC could breach the MSA by doing just that.

> C. **Quartiz has not plausibly alleged that NMMC breached the duty of good faith and fair dealing.**

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992). A finding of bad faith requires "a showing of more than bad judgment or negligence; . . . bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Univ of S. Miss. v. Williams*, 891 So. 2d 160, 170-71 (Miss. 2004) (cleaned up). A party does not breach the implied covenant of good faith and fair dealing when the party "took only those actions which were duly authorized by the contract." *Limbert v. Miss. Univ. for Women Alumnae Ass'n*, 998 So. 2d 993, 999 (Miss. 2008).

Quartiz asserts that NMMC acted in bad faith by claiming a license to the Deliverable and pursuing litigation. These allegations, without more, are conclusory and cannot sustain a finding of bad faith. NMMC's motion is granted on this point.

> D. **Quartiz has not plausibly alleged tortious interference with contract against SpearMC.**

Tortious interference with contract occurs when one causes another to breach a contract with a third person. *Par Indust., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). The claimant must prove:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause (which constitutes malice), and (4) actual damage and loss resulted.

*Id.* (cleaned up).

In addition to the elements above, the claimant must prove that "the contract would have been performed but for the alleged interference." *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999) (cleaned up). The claimant must also show that the acts "were the proximate cause of the loss or damage suffered." *Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1099 (Miss. 2005)

Quartiz has not plausibly alleged that NMMC breached the MSA, so its claim fails on that ground. *See Rex Distrib. Co. v. Anheuser-busch, LLC*, 271 So. 3d 445, 453 (Miss. 2019). And even if Quartiz had plausibly alleged a breach, it has not alleged that SpearMC is the cause of NMMC's alleged breach. SpearMC's motion is granted on this issue.

**E.     Quartiz has not plausibly alleged tortious interference with business relations against SpearMC.**

Tortious interference with business relations "exists where one engages in some act with a malicious intent to interfere and injure the business of another, and the injury does in fact result." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 747 (Miss. 2019). "Malice in law is not necessarily personal hate or ill will, but it is the intent, without justification or excuse, to commit a wrongful act." *Harmon v. Regions Bank*, 961 So. 2d 693, 699 (Miss. 2007). Mississippi courts, however, have found that the effort to increase profitability, without more is not improper. *Silver Dollar Sales, Inc. v. Battah*, 391 So. 3d 845, 852 (Miss. Ct. App. 2024) (citing *McBride Consulting Serv. LLC v. Waste Mgmt. of Miss., Inc.*, 949 So. 2d 52, 57 (Miss. Ct. App. 2006)).

Quartiz alleges that SpearMC sought out NMMC even though it knew that NMMC was serviced by Quartiz. Competition is to be expected in business, so that is by itself unproblematic. But Quartiz further alleges that SpearMC instructed NMMC to conceal its

8

relationship when it requested the database backup. Quartiz asserts that it was not a cybersecurity audit that led NMMC to request a copy of the database backup but a command from SpearMC as part of efforts to lure NMMC away.

The crux of this claim is Quartiz's belief that SpearMC improperly influenced NMMC to end its relationship with Quartiz. Having reviewed the parties' arguments, Quartiz has not plausibly alleged that SpearMC acted with malice. Quartiz has not alleged that either NMMC or SpearMC was required to notify it of their intent to enter an MSA. Quartiz also has not alleged that SpearMC violated any law by seeking out a client already serviced by a competitor. Quartiz admits that its arrangement with NMMC was financially beneficial, so its stands to reason that SpearMC would receive a similar financial benefit by securing NMMC as a client. That said, Quartiz has not alleged that SpearMC's actions were done with any desire other than to increase profitability. SpearMC's motion is granted on this ground.

**F.   Quartiz has not plausibly alleged that NMMC and SpearMC engaged in a civil conspiracy.**

A claim of a civil conspiracy requires showing: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Distrib. Co.*, 271 So. 3d at 455.

Quartiz alleges that NMMC and SpearMC entered a civil conspiracy to lie about NMMC's reason for requesting the database backup. It submits that "the timing of [their] agreement and the procurement of the database backup" supports its position. Docket No. 191 at 16. The Court is not convinced that Quartiz has alleged an "unlawful overt act" that supports its claim. *See id.* NMMC and SpearMC's motions are granted on this ground.

9

> **G. Quartiz has not plausibly alleged that NMMC or SpearMC is liable for conversion.**

"Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Walker v. Brown*, 501 So. 2d 358, 361 (Miss. 1987) (citation omitted). A "good faith reliance" is not a defense to liability under the tort of conversion. *Id.*

Quartiz has not plausibly stated a claim for conversion because it has not shown that either NMMC or SpearMC's use clashes with NMMC's license. NMMC and SpearMC's motions are granted on this point.

> **H. Quartiz has not plausibly alleged that NMMC or SpearMC violated the Defend Trade Secrets Act or the Mississippi Uniform Trade Secrets Act.**

The Defend Trade Secrets Act allows trade secret owners to sue in federal court for misappropriation. 18 U.S.C. § 1836. The Mississippi Uniform Trade Secrets Act mirrors its federal counterpart. MISS. CODE ANN. § 75-26-1 et seq. To succeed on either claim, "a plaintiff must demonstrate that: (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018); *see also Seven Seas Techs., Inc. v. Infinite Comput. Sols., Inc.*, 353 F. Supp. 3d 545, 553 (S.D. Miss. 2018).

Assuming that information contained within the database backup qualifies as a trade secret, Quartiz has not shown that either NMMC or SpearMC obtained this information through breach of a confidential relationship or other improper means. As the Court has already discussed, Quartiz has not plausibly alleged that NMMC lacked a license to share the database backup. Absent this showing, it cannot satisfy the second element of either law.

**I.     Quartiz has not plausibly alleged a counterclaim for "liability per se" against NMMC or SpearMC.**

Quartiz seeks to bring a counterclaim for "liability per se" premised on its belief that NMMC and SpearMC violated the Mississippi Computer Crimes and Identify Theft Act. This law does not empower Quartiz to bring a civil claim premised on violation of a criminal law. *See* MISS. CODE ANN. § 91-1-1. And Quartiz has not otherwise pointed the Court to a proper criminal judgment of conviction. Its assertion that NMMC or SpearMC violated the Mississippi Computer Crimes and Identify Theft Act is conclusory and cannot support a claim against either party.

### IV.     Conclusion

NMMC and SpearMC's motions are granted. The parties shall contact the chambers of the Magistrate Judge within 10 days to coordinate a scheduling conference.

**SO ORDERED**, this the 31st day of July, 2025.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE